UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-11239-GAO

DANIEL T. SMITH, Individually and
as Executor of the ESTATE OF NORA M. SMITH,

Plaintiffs,

v.

ROBERTSHAW CONTROLS CO., AMERICAN
WATER HEATER CO., and AMERIGAS PROPANE, L.P.,

Defendants.

ORDERS ON PENDING MOTIONS
December 31, 2003

O'TOOLE, D.J.

After hearing, the following orders are made with respect to pending motions:

1. The several pending motions for leave to file various papers (Nos. 127, 135, 136, 139, and 143) are GRANTED.

2. The plaintiff's motion to strike portions of the reply of the defendant Amerigas Propane, L.P. (No. 148) is DENIED.

3. The motion of the defendant Amerigas Propane, L.P. to advance the hearing on the motions for summary judgment (No. 143) is MOOT.

4. The motion of the defendant American Water Heater Company to strike the late-filed affidavit of David Cox (No. 138) is GRANTED. The proffer of expert testimony from Mr. Cox is

DOCKETED 153

limited to the opinions and grounds contained in his report dated December 20, 2002, his supplemental report dated January 14, 2003, and his deposition testimony.

5. The several motions by the defendants to preclude certain expert testimony by David Cox (Nos. 114, 120, and 151) are GRANTED IN PART and DENIED IN PART.

The motions are granted to the extent they seek to preclude testimony by Mr. Cox concerning the existence of a defect in the mechanical design or manufacture of the Unitrol 110 gas control that was installed on the water heater in the plaintiff's house. As his deposition testimony establishes, Mr. Cox is not qualified by education, training, or experience to testify as an expert in mechanical design in general or in the mechanical design of such devices as the Unitrol 110 control in particular. In any event, at the hearing on these motions, counsel for the plaintiff acknowledged that Mr. Cox is proffered only as an expert in the "cause and origin" of gas fires, and of the fire at issue in this case, and not as an expert in the mechanical design of devices such as the Unitrol 110 control.

The motions are denied to the extent that they seek to preclude Mr. Cox's testimony concerning the cause and origin of the fire.

However, it is important to note that Mr. Cox's testimony as to the "cause" of the fire is limited to "cause" as that term would be understood and used in the field of fire investigations, *not* as that term would be understood and used in the field of mechanical engineering. In other words, Mr. Cox is not permitted to testify to any opinion about the cause of the fire that relies upon an understanding or explication of the mechanical design of the device, or of its adequacy or reasonableness. Specifically, he is not qualified, and is not permitted, to testify concerning the existence of a defect in the mechanical design (or manufacture) of the device.

2

6. The motion of the defendant Amerigas Propane, L.P. to preclude the testimony of William Kitzes (No. 151) is GRANTED. The opinions proposed to be expressed by Mr. Kitzes depend on proposed testimony by Mr. Cox that the Unitrol 100 control at issue was defective. Since Mr. Cox is precluded from testifying to such an opinion for the reasons set forth above, Mr. Kitzes' testimony, which requires the precluded testimony as a predicate, is not relevant and is excluded.

7. The motion of the defendant American Water Heater Company for summary judgment (No. 116) is GRANTED.

The Second Amended Complaint asserts two claims against American Water Heater. Count II asserts a claim on behalf of the plaintiff Daniel Smith as an individual for injury suffered directly by him; Count V asserts a claim for loss of consortium, originally on behalf of Mr. Smith's wife, Nora Smith, and now on behalf of her estate, resulting from the injury to Daniel Smith complained of in Count II. The theory of liability alleged in Count II, which applies also to the consortium claim, is said to be "strict products liability." The complaint alleges that American Water Heater's predecessor manufactured the water heater in the Smith home and used the Robertshaw Unitrol 110 control as a component part. The complaint further alleges that the control had been recalled by Robertshaw in 1984 because of a defect. The complaint alleges that because of the defective Unitrol valve, propane gas leaked from the heating system and exploded when Mr. Smith attempted to light the pilot of the water heater, causing Mr. Smith serious injury. As a basis for liability, Count II alleges that American Water Heater "owed a strict duty to the Plaintiff to make its Hotstream gas hot water heater safe," that it "breached its duty to the Plaintiff because the Hotstream gas hot water heater contained a Unitrol valve that was in a defective condition and unreasonably dangerous as evidenced by the May 1984 recall and the explosion which severely injured and burned" Mr. Smith,

and that American Water Heater's "defective and unreasonably dangerous Hotstream gas hot water heater containing the Unitrol valve was the actual and proximate cause of the explosion which severely injured" Mr. Smith. The loss of consortium count necessarily depends on the same allegations.

If the pleading is to be taken at face value, it does not set forth a theory of liability recognized under Massachusetts law, which is applicable in this action. Massachusetts law does not authorize a cause of action for "strict products liability." See Back v. Wickes Corp., 378 N.E.2d 964, 968-69 (Mass. 1978); Swartz v. General Motors Corp., 378 N.E.2d 61, 63-64 (Mass. 1978). Nevertheless, the parties have treated the case as if it were pled properly under Massachusetts law to allege the recognized cause of action for breach of an implied warranty of merchantability under the Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 2-314.

To prove liability under this theory, the plaintiff must prove not only that the Unitrol 110 control was the "cause" of the fire – that is, it permitted the flow of gas that ignited – but also that the control was defective and unreasonably dangerous for normal use at the time it was sold as part of the water heater by American Water Heater's corporate predecessor. See Lally v. Volkswagen v. Aktiengesellschaft, 698 N.E.2d 28, 43 (Mass. App. Ct. 1998). In light of the ruling concerning the scope of Mr. Cox's testimony, above, on the present summary judgment record the plaintiff is not able to prove that the control was defective and unreasonably dangerous at the relevant time, and thus is unable to succeed on a breach of warranty theory of liability.

The theory of defect as pled in the complaint rested on the proposition that the Unitrol 110 control on the Smith water heater was a specimen of a class of Robertshaw Unitrol 110 controls that had been recalled at the prodding of the Consumer Products Safety Commission because of a design

defect. If the plaintiff were able to prove that the control at issue in this case was a "recall" control, he would be able to tie into the evidence of design defect applicable to such controls, including evidence amassed in the course of the recall episode. He is not, however, able to prove that the control in question was a recall control. There is uncontroverted evidence that the controls subject to recall could be readily identified by visual inspection from the spatial relationship between an indicator and the word "pilot" on a red knob on the exterior of the control. Even Mr. Cox acknowledged at his deposition that, applying the visual inspection criteria specified in the course of the recall itself, the enhanced photograph of the actual control at issue here (the only existing evidence of the appearance of the control) indicates that it was not a control that was subject to the recall and thus, in the plaintiff's view, presumptively (or inferentially) defective.

The repairman Lovell's service note to the effect that the control on the water heater was on a "recall list" is not sufficient to create a genuine, trial-worthy issue of fact concerning whether the control was a recall control or not. Put aside that Lovell later testified that his identification was casual, not careful; the plaintiff correctly points out that jurors could possibly discredit that testimony. Lovell's contemporary notation is essentially an *opinion* by him concerning the identification of the control on the water heater. The notation would be potentially admissible as a lay opinion, but only if the Court, as a preliminary matter under Fed. R. Evid. 104, were to determine that the opinion was "rationally based on the perception of the witness" and that the opinion was "helpful to . . . the determination of a fact in issue." Fed. R. Evid. 701. I have not been called on to make such a determination, and note only that the admissibility of the notation under these standards is not a foregone conclusion.

The more fundamental problem is that in order to conclude, on the sole basis of the Lovell notation, that the control on the water heater was a recall control, the jury would have to ignore uncontradicted objective evidence to the contrary, and for them to do so would not be a rational exercise of judgment. In the absence of the control itself, a photograph of the water heater after the accident is the only surviving evidence of the physical appearance of the control. An enhancement of the photograph, which has not been challenged, permits comparison of the features of the control with the features of the recalled devices, and that comparison indicates that the control on the water heater at issue does not have the characteristics that classify it as a recall control. Not only did Robertshaw's Mr. Cropp testify to this, but the plaintiff's witness Mr. Cox acknowledged it as well in his deposition. It is not controverted that the control in the picture does not match the description of the recall devices. In this circumstance, Lovell's opinion expressed in his service note is not sufficient to create a genuine issue of material fact.

Perhaps concerned about his inability to prove that the control was a recall control and thus presumptively defective, the plaintiff through Mr. Cox proposed an alternative theory: that the design of the control permitted debris of some sort to become lodged in the interior in some way so as to keep the main inlet valve at least partially open, thus permitting the gas to flow through when an unsuspecting user would think the flow of gas had stopped. It is sufficient to address this point to say that such a theory would require expert explication, and Mr. Cox's proposed opinion testimony concerning such matters has been excluded, leaving no witness in a position to offer such testimony. Without it, no finding of such a defect is possible.

The plaintiff also seeks to rely on an inference under the doctrine of *res ipsa loquitur*. At minimum, the doctrine is not available to the plaintiff here in the absence of guiding expert

testimony, which is lacking. The essence of the *res ipsa* inference is that the accident is of the sort that would not, in common experience, have occurred in the absence of negligence, or in this case, defect, and thus the presence of a defect might be inferred from the fact of the accident. A lay jury, however, has no "common experience" with the working of gas control devices such as the Unitrol 110, and thus whether the accident is one of the sort that could happen in the absence of a design or manufacturing defect present at the time the device left the defendant's control is a question the jury could properly consider and answer only with the assistance of expert testimony. See Enrich v. Windmere Corp., 616 N.E.2d 1081, 1085 (Mass. 1993). Moreover, even if the *res ipsa* inference might be permitted without expert testimony in the case of a brand-new device that has not been mishandled in any way, see White v. W.W. Grainger Co., No. 85-0933-C, 1988 WL 290663 (D. Mass. Feb. 16, 1988), it is a far different circumstance when the device has left the defendant's control decades before the accident and there is evidence of poor maintenance or even neglect or abuse, as here.[1]

A separate ground exists for granting American Water Heater's motion for summary judgment: the plaintiff failed to give prompt notice of his claims, and American was prejudiced by the delay.

"Massachusetts law embodies a notice requirement for warranty claims." Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 448 (1st Cir. 1997); see also Mass. Gen. Laws ch. 106, § 2-318 ("Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby."). "As the rule has been formulated, a plaintiff must give reasonably

---

[1] The State Fire Marshal's report noted that the water heater "was poorly maintained and had deep corrosion and rust on the pilot and burner unit."

7

prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations." Sacramona, 106 F.3d at 448-49.

This defense ordinarily presents a fact question for the jury. Id. at 449. However, summary judgment may be granted if a reasonable jury would be compelled to find that the defendant was prejudiced by delay. Id. "[T]o show prejudice based on a lack of notice, the defendants need[] only . . . prove that evidence was lost that might well have helped them . . . ." Id. Here, it is undisputed that the plaintiff did not give notice to any defendants of the breach of warranty claim until the filing of the complaint, almost three years after the accident and well after the critical physical evidence had been discarded or lost. It is also not subject to dispute that the lost evidence "might well have helped" American Water Heater to defend against this suit. The device that is alleged to have been defective, if it had been preserved, could have been examined and evaluated. If the plaintiff were to be able to go forward with the case as he hoped, the opportunity to examine the device itself, and other materials, such as piping, etc., could well be of significant value in meeting the theories that Mr. Cox would seek to present. In these circumstances, under the standard set out in Sacramona a jury would be compelled to find that the defendant had been prejudiced by the delay in receiving notice until after crucial evidence, under the control of the plaintiff, had been lost.

8. The motion of the defendant Amerigas Propane, L.P. for summary judgment (No. 122) is GRANTED.

Invoking the Restatement (Second) of Torts § 323, the plaintiff argues that Amerigas, when it sent a repairman in response to Smith's service call in August 1995, voluntarily assumed a duty to inspect the water heater system. Section 323 states,

8

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

According to the plaintiff's argument, Amerigas's duty to inspect the gas control at the water heater arose because Amerigas participated in the GAS Check Program, and as a participant, Amerigas had promised to inspect its customers' water heater systems for certain dangers, such as recalled parts.

The repairman had been sent to the cottage at Mr. Smith's request because he had smelled gas in the back yard. The repairman discovered a leak in the piping outside the house and repaired it. There is no allegation that the repairs had any role in the accident almost two years later. After completing the repairs, the serviceman relighted the pilot of the water heater. The claim is that he then breached a duty by failing to note that the Unitrol 110 control was subject to recall and failing to so advise Mr. Smith. (Of course, the evidence now is that the control was *not* subject to recall.) Completely lacking, however, is any evidence that either of the two conditions specified in Section 323 is satisfied.

There is no evidence that anything done or omitted by the repairman increased the risk. At most, by not observing and reporting the existence of a potentially dangerous situation, he left the risk the same. He may not have diminished the risk, but that is not what Section 323 provides.

As to the second condition, there is no evidence of any reliance by Mr. Smith on the repairman to do anything other than repair the gas leak he had detected outside the house. There is no evidence that Mr. Smith knew that Amerigas was a participant in the GAS Check Program. There is no evidence that Amerigas advertised or informed the public that it was participating in the program. Without such or similar evidence, a jury could not find that Smith had relied on Amerigas

9

to inspect the system. Cf. Cottman v. CVS Pharmacy, 764 N.E.2d 814, 821-23 (Mass. 2002) (pharmacy assumed duty to provide adequate warning of prescription's side effects to customers because by advertisements and other communications, on which plaintiff relied, it voluntarily undertook the duty); Mullins v. Pine Manor College, 449 N.E.2d 331, 336-37 (Mass. 1983) (college voluntarily assumed duty to provide adequate security to students where evidence showed that "students and their parents rely on colleges to exercise care to safeguard the well-being of students").

Finally, it may be noted that although I have granted Amerigas' motion to exclude the testimony of Mr. Kitzes, see paragraph 6 above, the grant of the summary judgment motion does not depend on the unavailability of Mr. Kitzes' testimony. With it or without it, the motion for summary judgment would be granted.

9. The grant of summary judgment in favor of American Water Heater and Amerigas Propane disposes of the plaintiffs' claims against them, but does not necessarily dispose of any pending cross-claims among the defendants, and does not dispose of the plaintiffs' claims against Robertshaw. To consider the implications of these rulings, counsel are directed to appear for a conference at 11:00 a.m., Wednesday, January 7, 2004, in Courtroom 9, John Joseph Moakley United States Courthouse.

In all respects as set forth above, it is SO ORDERED.

December 31, 2003
DATE

_____
DISTRICT JUDGE

10